UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA

JOSEPH THOMPSON, JR.                          CIVIL ACTION

VERSUS                                        NO: 11-1234

HOUMA POLICE DEPARTMENT, ET AL                SECTION: J

                           **ORDER AND REASONS**

Before the Court is Defendants' Motion for Partial Summary Judgment **(Rec. Doc. 38)**, Plaintiff's Opposition **(Rec. Doc. 42)**, and Defendants' Reply **(Rec. Doc. 47)**. Defendants' motion was set for hearing on the briefs on July 17, 2013. Having considered the motion, the parties' submissions, the record, and the applicable law, the Court finds, for reasons expressed below, that Defendants' motion should be **GRANTED.**

                  **PROCEDURAL AND FACTUAL BACKGROUND**

On May 26, 2011, Plaintiff filed the instant action against Terrebonne Parish Consolidated Government (improperly named as the Houma Police Department), Chief Duplantis, and Captain Ledet (hereinafter "Defendants"). (Pl.'s Compl., Rec. Doc. 1, p. 1; Pl.'s First Amend. Compl., Rec. Doc. 27, p. 1). Plaintiff alleged, *inter alia*, that Defendants negligently failed to file the paperwork necessary for Plaintiff to receive state supplemental pay provided by the State of Louisiana, and that Defendants violated his First Amendment right to freedom of speech. (Pl.'s First Amend. Compl.,

                                  1

Rec. Doc. 27, p. 1-4).

At all times relevant to this litigation, Plaintiff was employed as the Program Director of the Weed and Seed program in Mechanicville, Louisiana. (Affidavit of J. Dana Ortego, Rec. Doc. 38-2, p. 2). On April 23, 2010, Plaintiff's stepson was arrested for possession of various controlled dangerous substances. (Defs.' Memo. in Support of Mtn. for Partial. Summ. Judg., Rec. Doc. 38-1, p. 3). During the course of the arrest, Plaintiff's stepson was injured, though the cause of his injuries is disputed. (Defs.' Memo. in Support of Mtn. for Partial. Summ. Judg., Rec. Doc. 38-1, p. 3). Plaintiff spoke with reporters at the Houma Courier newspaper, claiming that "officers from his own agency excessively beat his stepson ... and ... calling for an independent investigation." (Affidavit of Def. Duplantis, Rec. Doc. 38-5, p. 4). It is uncontested that Plaintiff did not have permission from his superior, Chief Duplantis, to discuss the matter with the newspaper. (Defs.' Stat. of Uncont. Mat. Facts, Rec. Doc. 38-7, p. 2; Pl.'s Stat. of Cont. Mat. Facts., Rec. Doc. 42-1, p. 1). In an article published in the Houma Courier on May 1, 2010, Plaintiff is quoted to have said:

> This beating that this child took is so severe that there's a great need for an outside agency to investigate this. ... This is why the people, community residents,

don't have that trust in the department. You regress when things like this happen."

(Affidavit of Def. Duplantis, Rec. Doc. 38-5, p. 4).

Shortly thereafter, Plaintiff attended a counseling session with his superior, Captain Ledet, "where Captain Ledet explained that Article 35 of the Houma Police Department's policy manual prohibited Plaintiff from discussing police business with the media." (Defs.' Memo. in Support of Mtn. for Partial. Summ. Judg., Rec. Doc. 38-1, p. 7).[1] Captain Ledet stated that she does not recall whether she had Plaintiff sign a copy of Article 35. (Depo. of Def. Ledet, Rec. Doc. 38-6, p. 3). Plaintiff has stated that he signed this copy of Article 35 and that the signed copy was placed in his personnel file. (Depo. of Pl., Rec. Doc. 42-5, p. 1). Plaintiff contends that these actions by Defendants violated his First Amendment right to freedom of speech. (Pl.'s Opp., Rec. Doc. 42, p. 2).

Defendants filed the instant Motion for Partial Summary

---

[1] The Houma Police Department Policies and Procedures Manual, Article 35, regarding Public Statements and Appearances, reads, in pertinent part:

> A member shall not publicly represent himself as an employee of the Houma Police Department and publicly criticize or ridicule the Houma Police Department, its policies or other members by speech, writing, or other expression, where such speech, writing, or other expression is defamatory, obscene, unlawful or undermines the effectiveness of the Houma Police Department.

(Affidavit of Def. Duplantis, Rec. Doc. 38-5, p. 3).

3

Judgment (Rec. Doc. 38) on July 1, 2013. Plaintiff filed his Opposition (Rec. Doc. 42) on July 9, 2013, and Defendants filed their Reply (Rec. Doc. 47) on July 16, 2013.

### PARTIES' ARGUMENTS

Defendants urge: (1) that Plaintiff's negligence claim should be dismissed because Plaintiff is not a full-time law enforcement officer employed by Terrebonne Parish Consolidated Government and thus is ineligible for state supplemental pay, and (2) that Plaintiff's First Amendment claim should be dismissed because Plaintiff's freedom of speech was not unlawfully impinged upon by the Defendants (Defs.' Memo. in Support of Mtn. for Partial. Summ. Judg., Rec. Doc. 38-1, p. 1).

### A. Negligence Claim Regarding State Supplemental Pay

Plaintiff alleges that throughout his employment, Defendants have negligently failed to file the paperwork necessary for Plaintiff to receive state supplemental pay. (Pl.'s Opp., Rec. Doc. 42, p. 2). Defendants have not contested the fact that they have failed to file such paperwork; however, they argue that because Plaintiff is not a full-time, duly commissioned law enforcement officer as required by the relevant statute, Plaintiff is not entitled to state supplemental pay. (Defs.' Memo. in Support of Mtn. for Partial. Summ. Judg., Rec. Doc. 38-1, p. 1). Defendants argue that Plaintiff does not participate in law enforcement activities under the statute, including "actual enforcement of

state and local traffic laws, the making of physical arrests, testifying in court, bearing arms and other like functions." (Defs.' Memo. in Support of Mtn. for Partial. Summ. Judg., Rec. Doc. 38-1, p. 5). Chief Duplantis asserted in his affidavit that Plaintiff was never authorized by the Houma Police Department to perform any of the types of duties enumerated in the statute. (Affidavit of Def. Duplantis, Rec. Doc. 38-5, p. 2). Additionally, Defendants claim that the Program Director's Job Description shows that Plaintiff's position has never authorized him to perform law enforcement duties (Defs.' Memo. in Support of Mtn. for Partial. Summ. Judg., Rec. Doc. 38-1, p. 5).

Defendants contend that Plaintiff is a "*civil* employee working within the organization of the Houma Police Department who [is] to ... act as a liaison between the public and the Houma Police Department" (Defs.' Memo. in Support of Mtn. for Partial. Summ. Judg., Rec. Doc. 38-1, p. 2) (emphasis added). Defendants argue that because Plaintiff is a *civil* employee, he is not a full-time, duly commissioned law enforcement officer and thus is not entitled to state supplemental pay. (Defs.' Memo. in Support of Mtn. for Partial. Summ. Judg., Rec. Doc. 38-1, p. 1). According to Defendants, the purpose of the Weed and Seed program is to target community issues in Mechanicville, and the Program Director's responsibilities include developing community outreach programs, including neighborhood watch, after-school, healthcare, and job

5

search programs (Depo. of Def. TPCG, Rec. Doc. 38-4, p. 2-4).

Plaintiff admits that he serves as a "community liaison" and that his position has involved implementing Bible study programs and organizing community events, such as Easter egg hunts and voter registration drives (Depo. of Pl., Rec. Doc. 38-3, p. 2-3). Still, Plaintiff contests Defendants' assertion that he is a civilian employee and asserts that he is a commissioned law enforcement officer. (Pl.'s Stat. of Contested Material Facts, Rec. Doc. 42-1, p. 1).

## B.  First Amendment Claim

Defendants argue that Plaintiff cannot succeed in his First Amendment retaliation claim because Defendants took no adverse employment action against Plaintiff, which is an essential element of Plaintiff's prima facie case. (Defs.' Memo. in Support of Mtn. for Partial. Summ. Judg., Rec. Doc. 38-1, p. 6-7). According to Defendants, "[t]he only repercussion of Mr. Thompson contacting the Houma Courier was that he had a counseling session with his supervisor, Capt. Ledet," where she and Plaintiff discussed Article 35, and where Plaintiff arguably signed a copy of Article 35. (Defs.' Memo. in Support of Mtn. for Partial. Summ. Judg., Rec. Doc. 38-1, p. 7; Depo. of Pl., Rec. Doc. 42-5, p. 1). It is uncontested that this incident was the only action taken as a result of the newspaper article; Plaintiff was not terminated, demoted, or reprimanded in any other way, and his salary has been

6

increased since the newspaper article was published. (Depo. of Pl., Rec. Doc. 38-3, p. 4; Defs.' Memo. in Support of Mtn. for Partial. Summ. Judg., Rec. Doc. 38-1, p. 7; Defs.' Stat. of Uncont. Mat. Facts, Rec. Doc. 38-7, p. 1-2; Pl.'s Stat. of Cont. Mat. Facts., Rec. Doc. 42-1, p. 1).

Plaintiff contends that "he received a write-up in his folder in connection with his statement to the Houma Courier ... ," and that "[t]he write-up is certainly adverse, as it shows up in Plaintiff's employment record and affects any future employment prospects should Plaintiff be terminated." (Pl.'s Opp., Rec. Doc. 42, p. 3).

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.2d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). The Court will examine the evidence in the light most favorable to the nonmoving party. *Naquin v. Fluor*

*Daniel Servs. Corp.*, 935 F. Supp. 847, 848 (E.D. La. 1996) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). While all reasonable inferences are drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.2d at 1075. A Court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or

referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

### A.  Negligence Claim

The Louisiana Revised Statute article pertaining to state supplemental pay reads, in pertinent part:

> **A. (1)** In addition to the compensation now paid by any municipality included in this Subpart ... to any police officer, every police officer employed by any municipality ... which employs one or more police officers who devotes his full working time to law enforcement ... shall be paid by the state extra compensation in the amount of five hundred dollars per month for each full-time municipal ... law enforcement officer ... .
>
> **C.** For purposes of this Subpart a municipal ... officer entitled to additional pay out of state funds shall mean and refer to:
>
> **(1)** Any person employed on a full-time basis by a municipality ... as a duly commissioned law enforcement

9

> officer for the performance of *primary duties which encompass the enforcement of state laws and municipal or tribal ordinances, including actual enforcement of state and local traffic laws, the making of physical arrests, testifying in court, bearing arms and other like functions.*

LA. REV. STAT. ANN. § 33:2218.2 (2009) (emphasis added). Therefore, Plaintiff is only entitled to state supplemental pay if his position as Program Director of the Weed and Seed program qualifies him as a full-time, "duly commissioned law enforcement officer for the performance of *primary* duties" of the type enumerated in the statute.

    Plaintiff's Job Description states that the Weed and Seed Program Director's duties and responsibilities involve various tasks, including: developing statistical data regarding neighborhood demographics and crime, recommending objectives to address the needs of the community, preparing agendas and official minutes for meetings, researching funding sources for the program, providing technical and analytical guidance to the Houma Police Department in identifying and solving problems within the purview of the Weed and Seed program, and ensuring compliance with the guidelines of the U.S. Department of Justice. (Affidavit of J. Dana Ortego, Rec. Doc. 38-2, p. 4-5).

As evidence of his purported police status, Plaintiff submits that he answers to the Chief Duplantis (the police chief), is assigned Badge Number 239, is occasionally called upon to testify in court, is listed on the Houma Police Department's organizational chart, responds to complaints and conducts patrols, is licensed to carry a firearm, and is issued a police vehicle. (Pl.'s Opp., Rec. Doc. 42, p. 2). Plaintiff has submitted several documents as exhibits.[2] Among these documents are employment records indicating that Plaintiff is employed by the "Houma Police Department"and reports to Chief Duplantis and Captain Ledet, an organizational chart of Chief Duplantis's employees displaying Plaintiff's name in the "Project Manager" position, and a list of Badge Numbers listing Plaintiff's badge number as Number 239. (Exhibit "A" *en globo*, Rec. Doc. 42-2, p. 1-14). Plaintiff also submitted reports showing that he "patrolled" certain areas of town and responded to several complaints, largely consisting of "911 hang-up complaints." (Exhibit "A" *en globo*, Rec. Doc. 42-2, p. 15-20). Additionally,

---

[2] Plaintiff has submitted Exhibit "A" *en globo*, and Defendants have objected:

> Defendants object to Exhibits 'A' *en globo* inasmuch as it is not in proper form and not properly authenticated. Exhibits 'A' *en globo* contains various documents which are not attested to or identified in any fashion by way of affidavit or as an attachment to a deposition. Several of these documents have never been seen by the undersigned before their submission. It is submitted FRCP Rule 56 requires that any opposition to motion for summary judgment be by affidavit, deposition transcript or with consideration of the pleadings filed in the matter. Accordingly, the court should not consider Exhibit 'A' *en globo*.

The Court need not reach this argument because the result would be the same even if the Court declined to consider Exhibit "A" *en globo*.

11

Plaintiff submitted a certificate that certifies his completion of a Certified Basic Training Course, which Plaintiff claims is evidence that he is licensed to carry a firearm. (Exhibit "A" *en globo*, Rec. Doc. 42-2, p. 21; Pl.'s Opp., Rec. Doc. 42, p. 2). Plaintiff also submitted photographs of his work vehicle, which features a "Terrebonne Parish" decal on the side. (Exhibit "B," Rec. Doc. 42-3, p. 2). Plaintiff has also submitted an "Indexing Name Search" from the Terrebonne Clerk of Court's office featuring Plaintiff's name, which Plaintiff uses as evidence that he "is occasionally called to testify in Court." (Exhibit "A" *en globo*, Rec. Doc. 42-2, p. 11-12; Pl.'s Opp., Rec. Doc. 42, p. 2).

Defendants contend that because Plaintiff's certificate of completion of his Certified Basic Training Course says nothing on its face about weapons or firearms, it does not establish that Plaintiff is licensed to carry a firearm. (Defs.' Reply, Rec. Doc. 47, p. 2-3). Additionally, Defendants point out that Plaintiff has admitted in his deposition testimony that he has not complied with mandatory annual recertification procedures for police officers who carry weapons since the year 2001. (Defs.' Reply, Rec. Doc. 47, p. 2-3; Depo. of Pl., Rec. Doc. 47-2, p. 2-4). In his deposition of February 2, 2012, Plaintiff stated: "I'm not qualified to carry a weapon." (Depo. of Pl., Rec. Doc. 47-2, p. 2-4). Defendants also contend that Plaintiffs' possession of a badge number does not make him a law enforcement officer because all Houma Police Department

employees, even solely administrative employees, are assigned "badge numbers" for identification purposes, but only law enforcement officers are issued physical badges. (Defs.' Reply, Rec. Doc. 47, p. 3-4; Affidavit of Def. Duplantis, Rec. Doc. 47-1, p. 7-9). Defendants suggest that Plaintiff does not possess a physical police badge. (Defs.' Reply, Rec. Doc. 47, p. 3-4). Also, Defendants argue that Plaintiffs' work vehicle, which displays a "Terrebonne Parish" decal is not a law enforcement vehicle because all law enforcement vehicles display a quite distinct "Houma Police Department" decal. (Defs.' Reply, Rec. Doc. 47, p. 4; Affidavit of Def. Duplantis, Rec. Doc. 47-1, p. 4-5). According to Defendants, the fact that Plaintiff's name is listed on the Clerk of Court's index of those who have taken the oath to be deputies for the Terrebonne Parish Sheriff's Office does not establish that Plaintiff has ever testified at a trial in the capacity of a law enforcement officer on behalf of the Houma Police Department. (Defs.' Reply, Rec. Doc. 47, p. 2).

Defendants bear the burden of pointing out that the evidence in the record is insufficient with respect to an essential element of Plaintiff's negligence claim; here, Defendants point out an insufficiency of evidence that Plaintiff is a law enforcement officer entitled to state supplemental pay under the statute. The burden then shifts to Plaintiff to set out specific facts showing that a genuine issue exists as to whether he is a law enforcement

13

officer under the statute. Considering the evidence, it is clear that Plaintiff is employed in the Houma Police Department; however, this does not mean that Plaintiff is a law enforcement officer. Plaintiff has submitted no evidence that he engages in any of the activities enumerated in the statute, nor in any similar activities. Plaintiff does not enforce traffic laws or make physical arrests. Additionally, Plaintiff has submitted no evidence that he has ever actually testified in court on behalf of the Houma Police Department or Terrebonne Parish Consolidated Government. Plaintiff has admitted that he is "not qualified to carry a weapon" and that he does not bear arms as part of his job. Although Plaintiff has submitted evidence of his badge number and work vehicle to the Court, he has not provided the Court with evidence that he carries a physical badge, and it is uncontested that Plaintiff's vehicle bears a non-police decal. It is clear that Plaintiff does not engage in any other activities generally considered to be of a law enforcement nature. Plaintiff contends that he sometimes "responds to complaints and conducts patrols." Even so, it is clear that such activities are not Plaintiff's *primary* duties, as required by the statute. Rather, Plaintiff is primarily engaged in community outreach efforts, such as analyzing neighborhood demographics, responding to community concerns, and organizing Easter egg hunts and voter registration drives. While this type of community outreach is important and admirable work, it

14

is not police work under the statute.

Therefore, even considering this evidence in the light most favorable to Plaintiff, this Court finds that, as a matter of law, Plaintiff is not a law enforcement officer. Therefore, Plaintiff is not entitled to receive state supplemental pay under the statute, and Defendants could not have been negligent in failing to submit the required paperwork for Plaintiff to receive state supplemental pay.

### B. First Amendment Retaliation Claim

To succeed in a First Amendment retaliation claim, a plaintiff

> "must show that: (1) he suffered an adverse employment decision; (2) his speech involved a matter of public concern; (3) his interest in commenting on matters of public concern outweighs his employer's interest in promoting efficiency; and (4) his speech motivated the adverse employment decision.

*Stotter v. Univ. of Texas at San Antonio*, 508 F.3d 812, 825 (5th Cir. 2007). Both Plaintiff and Defendants offer arguments related to all four required elements; however, because this Court finds that there was no adverse employment decision here, the Court will only discuss the first element.

Under Fifth Circuit precedent, "[a]dverse employment actions

are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Pierce v. Texas Dep't of Criminal Justice, Institutional Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994) (citing *Rutan v. Republican Party*, 497 U.S. 62, 74 (1990)). The *Pierce* court found that "[a]lthough some actions may have had the effect of chilling ... protected speech, they are not actionable." *Id.* at 1550. According to the Fifth Circuit, "[t]he reason for not expanding the list of adverse employment actions is to ensure ... that the federal courts do not become "enmesh[ed]" in "relatively trivial matters." *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) (internal citations omitted); *see also Miller v. Bunce*, No. 99-41155, 2000 WL 959532, at *3 (5th Cir. June 7, 2000) (citing *Pierce*, 37 F.3d at 1149 n.1) ("In order to establish a constitutional injury, a plaintiff claiming retaliation for exercise of his first amendment rights must allege more than mere trivial actions."). In *Breaux*, the court stated:

> Given the narrow view of what constitutes an adverse employment action, this court has held that the following are *not* adverse employment actions: (1) mere accusations or criticism, (2) investigations, (3) psychological testing, (4) false accusations, and (5) polygraph examinations that do not have adverse results for the plaintiff.

*Breaux*, 205 F.3d at 157-58 (internal citations omitted).

It is well established that an employer's criticism of an employee, without more, does not constitute an adverse employment action. *Harrington v. Harris*, 118 F.3d 359, 366 (5th Cir. 1997). While formal reprimands[3] constitute adverse employment actions, verbal "reprimands" will not constitute adverse employment actions unless the plaintiff can show that they amount to "more than mere criticisms." *Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998). The *Pierce* plaintiff was "written up for minor infractions," and the court found that these write-ups did not constitute adverse employment actions.

Here, Defendants have stated that "[t]he only repercussion of Mr. Thompson contacting the Houma Courier" was his counseling session with Captain Ledet. (Defs.' Memo. in Support of Mtn. for Partial. Summ. Judg., Rec. Doc. 38-1, p. 7). Captain Ledet has stated that she may or may not have had Plaintiff sign a copy of

---

[3] *See, e.g., Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999) (Fifth Circuit found adverse employment actions where school superintendent transferred the plaintiff teachers, reprimanded them in their transfer letters, and included the letters in the plaintiff's personnel files. The formal reprimand stated:

> [R]ecent events, statements and other conduct on your part have led me to the conclusion that you are unable and/or unwilling to maintain the commitment you made to these goals and to the improvement process. It is apparent to me that neither the team nor I will be able to bring about a resolution that will satisfy you and remove or alleviate your discontent.

*Id.* n.4.)

Article 35. (Depo. of Def. Ledet, Rec. Doc. 38-6, p. 3).[4]  It is uncontested that this incident was the only disciplinary action taken as a result of the newspaper article and that since the article was published on May 1, 2010, Plaintiff has retained his position; he has not been terminated, demoted, or reprimanded in any other way, and his salary has actually been increased. (Depo. of Pl., Rec. Doc. 38-3, p. 4; Defs.' Memo. in Support of Mtn. for Partial. Summ. Judg., Rec. Doc. 38-1, p. 7; Defs.' Stat. of Uncont. Mat. Facts, Rec. Doc. 38-7, p. 1-2; Pl.'s Stat. of Cont. Mat. Facts., Rec. Doc. 42-1, p. 1).

Plaintiff argues that during the incident, he was "written up," and refers specifically to the following excerpt from his deposition testimony:

> **Q:** You said you were written up?
>
> **A:** Yes, sir.
>
> **Q:** By the chief? ...
>
> **A:** Yes. ...
>
> **Q:** What was given to you in terms of you being written up; were you given some type of document?

---

[4] Captain Ledet stated in her deposition: "... I spoke to [Plaintiff] about the Houma Police Department policy. I read it to him. I may have gotten him to sign it. At this point I don't remember if I did get him to sign it or not, but I explained it to him, that as being affiliated with the police department that we're not allowed to – the chief has designated people, and on the specific police ongoing investigations, he can't make any  comments about." (Depo. of Def. Ledet, Rec. Doc. 38-6, p. 3).

>   **A:** Yeah, the policy notice you just called out, something 35 or whatever, and it was this piece of paper, this one sheet. He said I know you probably never received this, and this is for you, so just sign here. And I dated it, I believe 5 something, 5/10 or something like that.
>
>   **Q:** And what happened in regard to that; did you receive any kind of discipline?
>
>   **A:** No; he put it in my folder. And I'm looking at the folder and he had, looked like a newspaper article in the folder. ...
>
>   **Q:** Anything else happened to you? Were you demoted; was your pay cut; anything happened to you from a financial standpoint?
>
>   **A:** Well, I was devastated. I wouldn't say financial.

(Depo. of Pl., Rec. Doc. 42-5, p. 1).

It is clear that there was no formal reprimand here. Unlike the employees in *Harris*, Plaintiff has not received a letter in his file stating the he is unable or unwilling to perform his duties or that he has been disciplined in any way. Rather, Plaintiff merely signed a copy of an employee handbook policy, laying out a code of conduct by which Plaintiff was already bound as an employee of the Houma Police Department. Perhaps Plaintiff's interaction with his superior could constitute a verbal reprimand, but Plaintiff has

failed to show that it amounted to more than mere criticism, and criticism is not considered an adverse employment action. Even if the Court found that Plaintiff was "written up," the Fifth Circuit held in *Pierce* that a mere write-up does not constitute an adverse employment action. This Court finds that this incident is the type of relatively trivial matter that does not, as a matter of law, constitute an adverse employment action for the purposes of the First Amendment.

## CONCLUSION

Accordingly, **IT IS ORDERED** that Defendants' Motion for Partial Summary Judgment **(Rec. Doc. 38)** is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Counts I and III are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the pre-trial conference, set for September 19, 2013, and the trial, set for October 15, 2013 are **cancelled**.

New Orleans, Louisiana this 10th day of September, 2013.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE